## Dodds v. Maryland Casualty Company.

(Decided October 6, 1915.)

### Appeal from McCracken Circuit Court.

1. **Principal and Agent—Authority of Agent—Burden of Proof.—** Agency is a fact the burden of proving which rests upon the party affirming its existence; and not only does such burden rest upon the latter as to the fact af agency, but also to prove the extent of the agency; that is, the burden is upon him to show that the act or acts of the alleged agent were within the apparent scope of his authority. Where, in an action against a principal it is sought to hold the latter responsible for the act of an agent, and there is an absence of evidence conducing to prove that such act of an agent was within the apparent scope of his authority, it is proper for the trial court to peremptorily direct a verdict for the defendant.

2. **Principal and Agent—Cannot Be Established By Declarations of the Agent Alone.**—The declarations of an alleged agent are not admissible as evidence against the alleged principal to prove the fact of his agency. Neither are the declarations of an agent admissible against the principal to show the extent of his authority from such principal. The agency must be proved by other evidence before his acts and statements can be shown against the principal.

BERRY & GRASSHAM for appellant.

WHEELER & HUGHES for appellee

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by appellant to recover of appellee $225.18 for repairs made by him, as alleged, upon an automobile owned by one Herman Friedman, at the request of appellee, and upon its undertaking to pay therefor. At the conclusion of all the evidence the trial court, on appellee's motion, peremptorily instructed the jury to return a verdict for it, which was done. Appellant complains of the judgment entered upon the verdict and of the refusal of the court to grant him a new trial; hence this appeal.

The facts were that Friedman, a resident of Paducah, owned an automobile upon which he had obtained an indemnity policy from the appellee, by the terms of which it agreed, on certain conditions expressed in the policy, to reimburse him for any injury and damages sustained to the automobile by accident. In the early part of 1914 an accident occurred to the machine from its running into another machine, and the injuries thereby caused Friedman's machine were repaired by appellant at his garage, the cost of which amounted to $225.18. It is the contention of appellant that the contract under which the machine was repaired was made by him with the appellee through its alleged agent, Coleman. The answer of appellee denied its liability for the cost of the repairs made upon the machine; also denied that it contracted to pay same or that Coleman, as its agent, was authorized to make such contract.

In addition to the appellant himself, his employe McDaniel, who did the work in repairing the machine, and one Joe Laevison, a relative of Friedman, testified to a conversation between Coleman and appellant, and Coleman and McDaniel, at appellant's garage, in which they

claimed Coleman directed appellant and McDaniel to repair the machine and "to put it in as good shape as when it was new, or as before the accident;" that he wanted a No. 1 job and "if he (Friedman) don't get a good job it won't be our fault."

Coleman, upon being introduced by appellee, testified that no such conversation as that related by appellant and his witnesses occurred. He admitted, however, that he went to the garage to inspect the automobile in its wrecked condition, claiming that it was his purpose to ascertain the nature and extent of the injuries and damages, that he might make a report to the appellee company of the matter. He further testified that he had acted for a year as appellee's claim agent and had occasionally received applications for insurance and collected premiums, but his only actual duties were the investigating of claims for injuries from accidents to automobiles on which appellee had issued policies, and that it was no part of his duty or agency to adjust or pay claims for damages asserted against appellee for injuries sustained to automobiles by accident.

Weil, who was in company with Coleman at the time the conversations with appellant and McDaniel occurred, corroborated Coleman as to there having been no direction from him to the parties named to repair the automobile, and as to his not having made any contract to that effect. Auber Smith, who is and was, at the time referred to, appellee's local agent at Paducah, testified that Coleman had no authority to enter into a contract with appellant looking to the repairing of the machine, or in the matter of appellee paying therefor; that he was a mere claim agent, to investigate and report to appellee such injuries as were inflicted upon machines upon which appellee had issued policies, and that he was without authority to adjust or settle any claims for loss that might be made against appellee. He admitted, however, that Coleman had occasionally received applications for insurance, delivered policies and collected premiums, although without authority to have repairs made upon automobiles upon which appellee had issued policies or to bind appellee for the payment of same.

If the question whether Coleman made with appellant the contract relied on by the latter, had been the only issue in the case it should have gone to the jury, as appellant's testimony and that of his witnesses, McDaniel

and Laevison, conduced to establish the contract, and that of Coleman and Weil tended to prove that no such contract was made; but the further question of agency, that is, Coleman's authority to make such a contract in behalf of appellee, was also involved, and the peremptory instruction directing the verdict for appellee was given by the trial court upon the theory that there was no evidence tending to establish such agency. In this conclusion we concur.

Excepting where a known agent acts in a given transaction, in which case there is of course a presumption, in the absence of evidence, that the relationship of principal and agent exists, the law indulges in no naked presumption that an agency exists; but, on the contrary, presumes that a person is acting for himself and not as agent for another. Agency is a fact the burden of proving which rests upon the party affirming its existence; and not only does such burden rest upon the latter as to the fact of agency, but also to prove the extent of the agency; that is, the burden is upon him to show that the act or acts of the agent were within the scope of his authority. As said in 31 Cyc., 1322:

"It is fundamental in the law of principal and agent that the power of every agent to bind his principal rests upon the authority conferred upon him by that principal. Without this authority for which the principal himself, by act or conduct, has become responsible, the agent can bind only himself. Every person therefore who undertakes to deal with an alleged agent is put upon inquiry, and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal. No third person can hold the principal if the agent acted without authority, or outside the scope of the authority really or apparently possessed by such agent. * * *" Godshaw v. Struck, 109 Ky., 285; Louisville Foundry Co. v. Patterson, 29 R., 349.

The only evidence in this case bearing on the question of agency, aside from the alleged admissions of Coleman to Laevison after it is claimed the contract between the former and appellant was made, was to the effect that Coleman was wholly without authority to make the alleged contract relied on by appellant, and there was nothing in the evidence which conduced to prove that

Coleman's previous connection with appellee or its business was such as to superinduce in the mind of appellant the belief that he had authority to make such a contract. Coleman's alleged declarations made to Laevison as to his agency, following the making of the alleged contract with appellant were incompetent and should have been excluded.

"The declarations of an alleged agent are not admissible against the alleged principal to prove the fact of his agency. Neither are the declarations of an agent admissible against the principal to show the extent of his authority as such agent. The agency must be proved by other evidence before his acts and statements can be shown against the principal. At best such declarations are mere hearsay." 31 Cyc., 1652; Gragg v. Home Ins. Co., 32 R., 988; Edminston v. Hurley, 30 R., 557; Peyton v. Old Woolen Mills Co., 28 R., 1303; Dieckman v. Weirich, 24 R., 2340.

As there was no error in the giving of the peremptory instruction, the judgment is affirmed.