## Peaslee-Gaulbert Company v. Rogers.

(Decided June 3, 1927.)

### Appeal from Daviess Circuit Court.

1.  Principal and Agent.—Purchaser of goods from drummer was not relieved from obligation to pay full amount by drummer's agreement that portion of goods might be returned for credit, in absence of evidence showing such agreement was supported by usage, or was either authorized or ratified by seller.

2.  Principal and Agent.—Agent's contract outside scope of apparent authority, unless it was originally authorized or subsequently ratified, does not bind principal.

3.  Principal and Agent.—Buyer of goods from drummer, who failed to show knowledge on part of seller of drummer's contract permitting return of goods for credit, was required to show agent was acting within apparent scope of authority.

4.  Principal and Agent.—Scope of apparent authority of drummer extends only to sale of goods on such terms as are reasonable or comport with usage and custom of trade in like undertakings.

5.  Principal and Agent.—Person dealing with drummer is required to act with ordinary prudence and reasonable diligence to ascertain scope of drummer's authority.

6.  Principal and Agent.—Where drummer assumes to exercise authority of unusual character in making sale, buyer, in dealing with him, is bound at his peril to know extent of authority, and cannot hold principal on theory that contract was within scope of apparent authority.

7. Principal and Agent.—Transaction by which seller credited buyer with some goods not made according to agreement and certain minor items returned held insufficient to show ratification of drummer's agreement on making sale that any or all of goods might be returned and credit given therefor, in action to recover purchase price.

C. W. WELLS for appellant.

LOUIS I. IGLEHEART for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The Peaslee-Gaulbert Company sought a judgment against R. E. Rogers for $859.60 for goods, wares, and merchandise they had sold him. Rogers admitted the purchase of the goods sued for, but denied that he owed for them any sum in excess of $174.73, it being his contention that he had paid the remaining $684.87 of the account by returning to the Peaslee-Gaulbert Company goods he had bought of them, the aggregate cost price of which was $684.87. The jury returned a verdict in favor of Rogers, and the judgment of $174.73 was entered against him. It is the contention of Rogers that the merchandise be bought of the Peaslee-Gaulbert Company was sold to him with the option on his part to return any or all of it, and that he purchased these goods on what is commonly known as a "sale or return contract," and he endeavors to bring himself within the terms of sections 720 and 721 of volume 24 R. C. L., to be found on pages 425 and 426 of that volume.

It is contended for the Peaslee-Gaulbert Company that the drummer that made this sale made no such contract as Rogers contends, and, moreover, had no authority so to do. The evidence is conflicting. Rogers contends such a contract was made, and the drummer who sold the goods said this, when asked about what he told Mr. Rogers about the right to return any of the goods:

> "The only agreement I made was in the event he should have in the various lines that he bought from me any dead items that were not moving, that we would, under condition that they were in salable condition to sell, in their original boxes and all, exchange these particular items for other items of their own line."

The contention of the Peaslee-Gualbert Company is that the jury should have been instructed to return a verdict for it for the amount claimed. It is agreed that the amount is correct. It is obvious the only question of importance which the court is called upon to consider is whether or not a drummer, without express authority so to do, or custom of trade in that behalf, could, on a sale of goods to a customer, obligate his principal by an agreement that any portion or all of the goods might be returned for credit at the price at which they were sold. This was an extraordinary or unusual contract, and the evidence does not disclose any support or sanction of it by any usage or custom of business. In order to prevail, is would be necessary for Rogers to show such a contract was made, and that the drummer had express authority to make it, or that the Peaslee-Gaulbert Company knew of it, and either did, or omitted to do, something which would amount to a ratification of it. Rogers failed to show either. He failed to show any knowledge on the part of the Peaslee-Gaulbert Company of the contract which he claims was made, and thus the Peaslee-Gaulbert Company would not be bound by the contract, unless it was made by the agent within the apparent scope of his authority. Those dealing with a drummer have the right to presume that the drummer is authorized to sell the goods in the usual manner only, and may only sell upon such terms as are reasonable or comport with the usage and custom of the trade in like undertakings, and it is to this extent, and this extent only, that a drummer may be said, as a matter of law, to be acting within the scope of his apparent authority. See Storey on Agency (2d Ed.) section 60; Tiffany on Agency, sections 45-47; Benjamin on Sales (6th Ed.) section 624; Wharton on Agency, section 189.

In the recent case of Standard Sanitary Mfg. Co. v. Stump, 212 Ky. 253, 278 S. W. 583, we said:

"It is well established law that in the absence of express authority to the contrary a traveling salesman's authority is limited to the soliciting of orders and transmitting them to his principal."

In this case Rogers was bound at his peril to know the extent of the authority of the drummer who sold him these goods. A person dealing with a drummer is required to act with ordinary prudence and reason-

able diligence. If the drummer assumes to exercise, in and about the making of the sale, authority of an unusual, improbable, and extraordinary character, such as would be sufficient to place a reasonably prudent person upon his guard in dealing with him, the party so dealt with will not be justified in disregarding what his common sense must tell him, and be permitted thereafter to seek to hold the principal to the contract so made, upon the theory that it was made within the scope of the agent's apparent authority. The facts of this case were not calculated to induce Rogers to believe that this contract was within the scope of the agent's apparent authority. He says that, if he had purchased the merchandise outright, without any privilege of returning it for credit, he would not have purchased such a large stock of goods, and would have used more care in the selection of it. This shows that Rogers believed he had an unusual arrangement about these goods. The fact that it was unusual was enough to put him on inquiry, and, when he failed to inquire, he did so at his peril. The evidence does not sustain his contention that the Peaslee-Gaulbert Company ratified this contract. They did permit Rogers to return a lot of seat pads, and they gave him credit for $70 for these pads; but their reason for taking back these pads was that they had agreed that upon them there should appear the words, "Buddy's place," which words it happened were not on them, and, for this reason, they allowed him to return those things. Twelve Klaxon horns were returned, and Rogers was given credit for $14.85 for them; but the evidence does not show why they were returned, nor why they were accepted except the drummer, Board, in his evidence said the company gave Rogers credit for these things, because they wanted to oblige him, and for no other reason. Some spark plugs were returned, but these were returned because they were not salable sizes, and they were exchanged for Ford plugs. These transactions were not sufficient to show that the Peaslee-Gaulbert Company had any knowledge of the unusual contract which Rogers claimed had been made with him or that they ratified it, and the court should have instructed the jury to find for the Peaslee-Gaulbert Company the amount claimed. Failure so to do was error, for which the judgment is reversed, and the cause remanded for consistent proceedings.