## International Shoe Company v. Johnson.

(Decided Nov. 14, 1933.)

O H. POLLARD and R. L. POLLARD for appellant.

GRANNIS BACH and C. F. SPENCER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This is the second appeal of this case. Johnson v. International Shoe Company, 228 Ky. 450, 15 S. W. (2d) 270. The nature and sufficiency of the contract claimed to have been made by Johnson with a traveling salesman of the International Shoe Company are stated in our former opinion. An examination of it discloses that the basis of his claim was that by contract the International Shoe Company agreed not to sell its shoes to any other merchant engaged in business at Jackson, Ky., so long as he carried same in stock; that he executed the contract by continuously purchasing its shoes, from 1920 to March 11, 1926; and that in violation of the contract it sold shoes to other merchants at Jackson, to his damage in the sum of $2,500. The trial court sustained a demurrer to the pleading setting up his counterclaim. On appeal to this court, the judgment was reversed, with directions. On a return of the case the International Shoe Company filed a responsive pleading, traversing Johnson's with the allegation that if the salesman entered into such a contract that he did so without

its authority, knowledge, or consent. It also alleged that it was a New Jersey corporation, organized subsequent to the date of the claimed contract, asserted to have been made with its traveling salesman in 1920; that the corporation with which he dealt in 1920 was a Missouri corporation of the same name. He traversed the allegations of this pleading, thus forming issues which were submitted to the jury under the instructions of the court. It returned a verdict in his favor of $500.

This action was originally brought by the International Shoe Company to recover a balance of $477.42, on account for shoes it had sold and delivered to him. The issues litigated were made by Johnson's answer presenting a counterclaim for damages. No judgment appears in the record concerning the $477.42. The instructions of the court make no reference to the debt of the company against Johnson, nor disclose the court's disposition of it. Johnson in his pleading, and also in his testimnoy before the jury, asserted that the contract between him and the company was made at the time he gave the first order to it for a bill of shoes, and that it was evidenced by its traveling salesman indorsing on the order that he (Johnson) was to have exclusive sale of the company's shoes in Jackson "as long as he wished to handle them." He testified that a duplicate copy of the order with the indorsement on it was delivered to him by the salesman, but that he did not preserve it, and was unable to produce it. He was permitted to testify that after the International Shoe Company began to sell other merchants the brand of its shoes he was carrying, he wrote the company protesting against its making sales to them, and that he reecived a letter from the company saying it would take care of him. This letter was not produced. The salesman with whom he claims he dealt, ceased to work for the company. Other salesmen canvassed Jackson and sold its shoes. He was permitted to testify that he had discussed the making of the contract on which he relies as the basis of his claim for damages with these traveling salesmen.

The burden of proof was on Johnson to show the authority of the salesman to make the contract, or that the company had received it or had knowledge thereof at the time it accepted, and filled, the order and shipped him the merchandise covered by it. Dodds v. Maryland Casualty Company, 166 Ky. 70, 178 S. W. 1134; New York Canners v. Rucker, 238 Ky. 204, 37 S. W. (2d) 31.

In the case of Peaslee-Gaulbert Company v. Rogers, 220 Ky. 338, 295 S. W. 137, 138, 55 A. L. R. 377, it is written:

"Those dealing with a drummer have the right to presume that the drummer is authorized to sell the goods in the usual manner only, and may only sell upon such terms as are reasonable or comport with the usage and custom of the trade in like undertakings, and it is to this extent, and this extent only, that a drummer may be said, as a matter of law, to be acting within the scope of his apparent authority. See Storey on Agency [2d Ed.] sec. 60; Tiffany on Agency, secs. 45-47; Benjamin on Sales [6th Ed.] sec. 624; Wharton on Agency, sec. 189."

In Standard Sanitary Mfg. Co. v. Stump, 212 Ky. 253, 278 S. W. 583, 585, we stated:

"It is well-established law that, in the absence of express authority to the contrary, a traveling salesman's authority is limited to the soliciting of orders and transmitting them to his principal."

The accepted rule is:

"If the drummer assumes to exercise, in and about the making of the sale, authority of an unusual, improbable, and extraordinary character, such as would be sufficient to place a reasonably prudent person upon his guard in dealing with him, the party so dealt with will not be justified in disregarding what his common sense must tell him, and be permitted thereafter to seek to hold the principal to the contract so made, upon the theory it was made within the scope of the agent's apparent authority." Peaslee-Gaulbert Company v. Rogers, supra.

The officers of the company (three of them), in their testimony, declared that the salesman's authority was limited to soliciting orders and transmitting them to the company, to be accepted or rejected by it, and that the company had no knowledge or information of Johnson's contract and that same was not heard of until it was declared on in this action; that they were in the employment of the Missouri corporation before and at the time he claims the contract was made with the salesman, and had been continuously since that time, and had handled and filled all orders of all customers, including Johnson. Johnson offered no evidence to the contrary. He rested his right to recover solely upon

his own declaration that the drummer wrote the indorsement on the first order, given in 1920 by him to the drummer for a bill of shoes. He offered no evidence to show, or tending to show, that the company ever recognized the existence or provisions of the indorsement on the order. He did not testify that in any order filled by the company, or any statement made by it or its officers at any time, indicated knowledge of the company of the existence of the order with the endorsement thereon. He testified that after the drummer with whom he made the contract ceased to work for the company, he had discussed with other salesmen of the company the existence and provisions, he asserts, were evidenced by the indorsement on the order. This character of testimony was objected to. The objection was overruled and his statements were permitted to go to the jury. The conversations of Johnson with the other drummers of the company and their statements to him were incompetent and improperly admitted. Notice to them of Johnson's claim, and of his assertion to them of rights under the contract, was not notice to the company. Conversations with a traveling salesman who has no authority to make a contract, because its making is not within the scope of his limited authority, is not notice to the company for which he travels and solicits orders. Peaslee-Gaulbert Company v. Rogers and Standard Sanitary Manufacturing Co. v. Stump, supra.

It is shown by the officers of the company that the extent of the authority of the traveling salesman with whom Johnson claims he made the contract, and those with whom he had conversations concerning his alleged contract, was to solicit and transmit orders, not effective as sales until accepted by the company. With this evidence uncontradicted it is clear that even though the contract was made by the salesman as claimed by Johnson, it was not enforceable, nor was the company liable for damages for breach of it, unless it had received notice of its existence at the time it filled the order on which it was indorsed or thereafter ratified it. Matthews' Apparatus Company v. Renz & Henry, 61 S. W. 9, 22 Ky. Law Rep. 1528; Ryan & Miller v. American Steel & Wire Co., 148 Ky. 481, 146 S. W. 1099; Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, 182 S. W. 191; Standard Sanitary Manufacturing Company v. Stump and Peaslee-Gaulbert Company v. Rogers, supra.

Johnson insists that the mere act of shipping the

shoes called for in the order on which he claims his contract was indorsed, is conclusive evidence of the ratification of the contract, though it was made by the salesman without authority of his principal and without notice to it.

It is true that one making a contract without authority for and in behalf of another, if such contract is subsequently ratified by the principal, he will be bound by it. Before the principal can be held as having ratified an unauthorized act of an agent, it is necessary for the one relying thereon as the basis of his cause of action or defense to show that the principal at the time of the ratification had full knowledge of the material facts of the transaction and intended to ratify it. Short v. Metz Company, 165 Ky. 319, 176 S. W. 1144; War Fork Land Company v. Marcum, 180 Ky. 352, 202 S. W. 668. Full knowledge by the principal of all the material facts is indispensable to a ratification by him of an unauthorized act of his agent. Fletcher v. Dysart, 9 B. Mon. 413; Caddy Oil Co. v. Sommer, 186 Ky. 843, 218 S. W. 288.

Johnson offered no evidence to show that the order, which he claims carried the indorsement showing his contract, was transmitted by the salesman and received by the company. The evidence of the officers of the company to the contrary entitled the company to a peremptory instruction, in the absence of evidence acknowledging a negotiation as we have indicated.

Other questoins are presented in the briefs; but from our view of the case, it is unnecessary to consider them.

Judgment is reversed for proceedings consistent with this opinion.